The next case before us is the case of, in the interest of J.C. Minor vs. Jeremiah C., and we have Mr. Edelis for the appellant, and we have Mr. Daly for the appellee, and you may, did I pronounce your name correctly? Edelis. Edelis. Trying to make a strange, strange name out of it. You may proceed. Thank you. May it please the court, counsel. I'm, my name's Edward Edelis, and I represent Jeremiah Cobb's senior. This case comes before this court from finding of the circuit court in Union County that Jeremiah Cobb's is an unfit parent. The Honorable Charles Kavanagh made the finding and terminated Mr. Cobb's parental rights. The sole issue that I present to you today is that that decision was against the manifest weight of the evidence. To start off, Mr. Cobb's is serving an eight year sentence in the Illinois Department of Corrections at this time as a result of a plea to aggravated criminal sexual abuse of his daughter. He also has a son who is the subject of this appeal, and that minor is currently three years of age. There is no allegation that Mr. Cobb's has, there's no evidence, I should say, of the record that Mr. Cobb's has been abusive to the minor three year old child. The state sought termination of parental rights under 750 ILCS 50 slash 1, uppercase D, subparagraph lowercase o and lowercase r. The first one is an allegation of repeated or continuous failure to provide adequate food, clothing, or shelter, although physically and financially able to do that. I would point out to the court that the law provides that the state's burden of proof is by clear and convincing evidence, and that I submit to the court that the state has failed to satisfy any burden of proof in this case. The only evidence that was presented by the state was the testimony of caseworker Ashley Kramer. There were no exhibits or other witnesses that the state offered. Ms. Kramer testified and agreed that Mr. Cobb's lived in the home with the child and the mother of the child from the child's birth, April 10th of 2013, until August 31st of 2013. She admitted that she had no knowledge of what support Mr. Cobb's provided for the child. She had no knowledge of what kind of contact or interaction or bond that Mr. Cobb's had with the child. She admitted that Mr. Cobb's enjoyed supervised visitation from August 31st of 2013 until October of 2013. Now, on August 31st... That was weekly for one to two hours? Yes, Your Honor. That was the period from which the mother moved out of the home because of DCFS involvement, and so she had to move from the home because of his pending investigation. And then he was arrested on October 17th of 2013, so during that period, yes. And that is the state's case right there. Are you making some allegation that a DCFS worker cannot testify to the things contained in her record? I mean, that they have to admit photographs or... No, no, I'm not, Your Honor. But I think that the record... In fact, I think that Ms. Kramer was asked, is there any indication in the record of other support or interaction with the child? I think her answer was no, she did not find anything in the record to elaborate on her testimony. So, no, I agree with you that the caseworker can't use hearsay, right? Technically, hearsay. These caseworkers change so routinely. Yes, yes. And this caseworker, as a matter of fact, had only been on this case for three months. So, well, I'm just trying to make sure I understand what you're getting at here, Mr. Attalos. You're talking about the portion of the basis upon which he was found unfit where the proof has to be that he provided little or no... had little or no contact or provided little or no support. I'm looking for the right language here. Now, that's in subparagraph O. Now, the second prong of their... Okay, let me just make this clear. But you're saying that that was the only evidence, is her testimony? That's what I'm saying. Now, your client testified... That's correct. ...that he was arrested, I guess it was in August? He was arrested on October 17th. Yeah, he was arrested October 17th, and he acknowledged in his testimony, didn't he, that he had no income after that date and provided no support after that date. That's correct. I mean, you're focusing narrowly on the three months that they all lived together. But isn't the time frame the court should look at as the time from when the child was born until the time he was incarcerated on the conviction? I agree. So, I mean, we have a pretty substantial period of time that by his own testimony he provided no support, okay? Yes, sir. And I think it also states, although physically and financially able to do so, is what subparagraph O ends with that, with that proviso of that section. Does subparagraph O of the section about having been convicted of a criminal offense? No, no, sir. Well, isn't that the only one upon which the court found unfitness from the conviction? I don't think the court's really clear. I think the court just found unfitness. Okay, well, let me quote from the court's order. In the court's written order finding unfitness, the court explained its reasons as follows. Quote, Jeremiah C is incarcerated as a result of a criminal conviction for aggravated criminal sexual abuse perpetrated against his daughter and was incarcerated at the time the motion to terminate parental rights was filed. And he goes on basically to cite all the elements of the subsection of the statute dealing with having been convicted of an offense, being unable to discharge his duties as a parent for more than two years, et cetera, et cetera. I mean, I took that to mean that was the basis upon which the trial court found him unfit. Well, then I'll be glad to address that. I mean, that's the written order that the court entered. December 31, 2015. Then I think that that section has four elements to prove. And I think that the first section is pretty clear, and that is that the parent is – or excuse me, that the child is in temporary custody or guardianship of DCFS, and that's pretty clear from the record. I admit that. And the second – well, I'm going to skip forward to the fourth element, if I might, and that's that incarceration of the parent will prevent him or the parent from discharging his parental responsibilities and duties, and we admit that. The outdate is 2018. But I think that the state failed to prove the second and the third element of this section, and that, number one, that the parent is incarcerated from criminal conviction at the time of the petition to terminate. And there's nothing in the record where that was introduced as far as that element. And secondly – Well, didn't he testify himself that he had been at November 12, 2015, fitness hearing? Okay. He testified that he'd been at Big Money Correctional Center for almost a year, and that would have dated back to before the petition to terminate was filed. Hmm. The petition was filed April 24, 2015, the petition to terminate parental rights, and on November 12, 2015, he said, I've been at Big Money Correctional Center for almost a year. Well, I think that the – Wouldn't that be sufficient evidence for the court to make that determination? I think that he can be there from commission, can be remitted to that facility for being a sexually dangerous person as a possibility, not being as a conviction of a crime. Okay, how about this one? in closing argument said, quote, we do grant that he is incarcerated as a result of a criminal conviction at the time the motion to terminate was filed. That's true, close quote. How about that?  But if I can go on to the third element, as far as little or no contact prior to incarceration or providing little or no support. And if you look at the finding of unfitness, if you look at that as a measurement of whether a parent is doing what they're supposed to do, I think you have to conclude that there is – that he did everything he could do for that child. He worked in the home, he worked, came home, he provided the only income for this family, he held the child, he cared for the child, he did household chores for the child. After arrest, he's – he just – he could not do anything further. So I think that that section, that element has not been proven and that the state bears that burden. Therefore, I would ask that the court reverse the finding of the circuit court. You have the opportunity for rebuttal, have you done? I would like to reserve some time for rebuttal, Your Honor. Okay, certainly. Mr. Daly? May it please the court and counsel. Your Honor, I make it a professional goal to be absolutely forthright with this court as much as I can. In – I received the reply brief of the respondent while I was hospitalized. I haven't had a chance to look at it until last night. In their brief, the state relied upon asking this court to take judicial notice of the end date for the prison time for the respondent, essentially as a means in which asking this court to sort of supply the proof for that particular element of proof of grounds for unfitness. Having looked at the reply brief, I did quite a bit more research last night on this. There is case law which seems to indicate that an appellate court cannot take judicial notice of items which are essentially supplying essential elements of something to be proven in a circuit court. So I'm so programmed, I suppose, as an appellate prosecutor to cite judicial notice in prison proceedings that perhaps I didn't review the context of it. Based upon statements made by Justice Stewart, it appears there are grounds of reference to some. I was going to propose, however, if the court still wishes an entertainment proposal, there is an alternative basis in which to argue this court could take judicial notice. The problem with that particular argument is it involves something perhaps more involved than I would typically characterize as a rebuttal to the reply brief. And I'm not sure that it would be compliant for me to make that argument here with regards to a Supreme Court rule, I think 341 of the arguments not raised in the initial briefs. So I was going to ask this court for leave for a very short period of time to file a supplementary brief to address that particular issue and the issue of judicial notice. The court fails to say, and I understand you have this in the expedited case. I don't understand. Is it in dispute, the discharge? Not the discharge, but the time of incarceration. Is that in dispute? It was not disputed below, but I don't believe, based upon the notes, I don't recall the state actually presenting evidence specifically establishing that particular element. It appears that there are other things that would at least tie that particular aspect. Well, this is an expedited case. That's the problem. We have an obligation to file our order in a short period of time. And if the court chooses not to do so, that's fine. If it did, I can have it done by the end of the business statement. But it's a very short argument. I'm just trying to be as candid as I can with the court. I believe that the argument that I made is an incorrect one in the sense of what I was proposing this court to consider. I don't believe I'm right. I'll leave it up to discretion. Well, I think we have no problem with it being filed expeditiously. No. When I deny it. Deny? Oh, never? I'm sorry. Deny. All right. Motion denied. Right. I think that's fair. All right. Well, then I can do really nothing more than ask this court to take a look at the records in total, including the judicial order of the court, and, in that sense, determine whether or not that argument is proven. With respect to the other two, three alms. Excuse me. Obviously, the dispositional order in March 2014 established guardianship with the Department of Children and Family Services. There was no objection to that, was there? No. To the adjudication of the award, should he agree to that, didn't he? I don't think that there was really anything in dispute except for the element as it relates to the discharging of parental responsibilities. Right. I'm sorry. Excuse me. To the whether he had little or no contact or probably little or no contact or support. I apologize. I think it's fairly obvious that he's not going to be able to discharge parental duties while he's in prison for the next several years. With regards to that, I think that my argument would roughly parallel some of the comments that Justice Stewart made earlier. There was a brief period of time in which the mother, the respondent, and the child lived together, and there doesn't appear to be any reason to dispute the fact that during that narrow time frame of a couple of months, he did take a particularly considerable interest in the welfare and upbringing of the child. The mother left on her own. There were some problems, obviously, that were sort of brewing on the horizon, if you will, if you see a front page. She left with the child. Ultimately, the state of the machine is proceeding a couple of weeks after that. The respondent himself conceded that he had not had any, provided no support whatsoever for the minor from that time period onwards to when he was sentenced to the Department of Corrections. So I think in view of those circumstances, and I think I characterized it as essentially 20% of the entire time frame, the respondent had taken any sort of action whatsoever. And I also note that while there was some sort of, I guess, a DCFS-arranged visitation that occurred after the state, after DCFS got involved in this case, the statute as listed is in disjointment. In other words, little or no contact or little or no support. So the state would only, if by necessity, have to establish one of those two particular aspects of it to show that the elements were met for this particular grounds for offense. So, again, I ask this Court, and I apologize for going off on a tangent a bit, but I felt it was just necessary to do so, and consider the record as a whole, and consider the evidence considered by the Court, and the Court's order in particular, with regards to the date and time of incarceration of the defendant, and affirm the judgment of the Circuit Court. No issues raised as to the best interests of this nomination. Thank you, Your Honor. Thank you, Mr. Daly. Mr. Atalos, do you have rebuttal? Your Honor, I don't think that I have any rebuttal. Well, this is pretty much most of Mr. Daly's argument I covered in my first part, but I'm available if there are any follow-up questions. I don't believe so. Thank you both for your briefs and your arguments. We'll take the matter under investigation. Render ruling in due course.